## THE EMMA KATE ROSS.[1]

### GEIN v. THE EMMA KATE ROSS.

*(District Court, E. D. New York. October 2, 1890.)*

COLLISION—SAILING VESSEL AND TOW—CROSSING COURSES—FAULT.

The tug E. K. R., with two heavy mud-scows astern on a hawser, came down the North river, about 500 feet off the New York piers. A lighter, having her mainsail hoisted, but with the peak dropped and with her jib furled, came out from the piers in tow of a tug, ahead of the E. K. R., and crossing her course. The wind at the time was fresh from the south-west. When the lighter came ahead of the tow, she cast off her tug, the momentum carrying her past the course of the tow. She thereupon attempted to shape her course to Hoboken, but was carried by the wind against the foremost scow. *Held*, that the collision was the fault of the lighter.

In Admiralty. Suit for damages by collision.
*Carpenter & Mosher*, for libelant.
*R. D. Benedict*, for claimant.

BENEDICT, J. This is an action to recover for injuries to the lighter Union, caused by a collision between that lighter and a mud-scow, at the time in tow of the tug Emma Kate Ross. The tug was proceeding

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

down the North river, having in tow astern two mud-scows loaded. The lighter came out of the slip at pier 6 in tow of a tug, the wind blowing freshly from the south-west. When the lighter was about ahead of the tow, she cast off her tug, and was carried by her momentum across the course of the tow; but, while endeavoring to get upon her course, was struck by the leading scow in tow of the Ross. The faults charged upon the tug are—*First*, in taking the scows in tow astern on a hawser; *second*, in taking the scows astern by a hawser so arranged as to render it impossible for the tug to control the course of the scow; *third*, in not keeping out of the way of the lighter, as required by law of a steam-vessel approaching a vessel under sail.

In regard to the first charge of negligence, I find that it is not negligence to tow mud-scows astern in the harbor of New York in ordinary wind and tide.

In regard to the second charge, the evidence shows that the scows were connected to the tug by a hawser attached to a bridle, and, further, that by using a bridle the course of scows towed astern can be controlled by the tug. I therefore hold it not to be negligence to tow mud-scows in this harbor by a hawser attached to a bridle under ordinary circumstances of wind and tide.

In support of the third charge, it is contended by the libelant that the proof shows that the collision was caused by the scow swinging out of the course of the tug and against the lighter, then outside of the tow. But the weight of the evidence is the other way. The lighter came out of the slip and under the bow of the tow, having her mainsail up, with the peak lowered, and no jib; the wind at the time blowing fresh from the south-west. When about abreast of the tow the steam-tug let go the lighter, and the lighter then, under the impulse given by the tug, passed outside of the course of the tow. The master of the lighter then put his helm up, and afterwards down, in an effort to get his lighter upon her course, but, owing to the condition of his sails, was unable to do so in time to avoid being carried by the wind down upon the scow, then moving slowly down the river in tow of the Ross. If it was not possible for the lighter, after having dropped her tug, to get under way without being driven by the wind upon the course of the tow, it was fault in the lighter to drop her tug when she did. If it was possible for the lighter to continue to move out from the tow it was fault not to do so. It is impossible to believe that the collision was caused by the heavy scow swinging out into the river and into the lighter, as claimed by the libelant. The libel must be dismissed.